IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JANIDET LUJANO**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 4822 |
| v. | ) |
| | ) Magistrate Judge |
| **TOWN OF CICERO**, *et al.*, | ) Martin C. Ashman |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Janidet Lujano ("Lujano") has sued the Town of Cicero and various municipal officials and employees (collectively "Defendants") for employment-related discrimination, bringing claims under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as a state law claim for the intentional infliction of emotional distress.  Currently before the Court is Defendants' motion to bar Desiree Connelly from testifying as an expert witness on behalf of Lujano.  The parties have consented to have this Court conduct all proceedings in this case, including the entry of final judgment pursuant to 28 U.S.C. § 636(c) and N.D. Ill. R. 73.1(c).  For the reasons set forth below, this Court finds that Defendants' motion should be granted.

The admissibility of expert testimony under Federal Rule of Evidence 702 is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The Seventh Circuit has interpreted *Daubert* as requiring a two-step analysis under Rule 702.  A court must determine whether the expert's testimony is reliable and, if it is, whether it assists the trier of fact "in

understanding the evidence or in determining a fact in issue." *Cummins v. Lyle Industries*, 93 F.3d 362, 367-68 (7th Cir. 1996). The first half of this test involves deciding if the witness is qualified "as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (internal quote and citation omitted). The court acts as a gatekeeper to insure that a witness is not only qualified to testify as an expert, but that "his qualifications provide a foundation for [him] to answer a specific question." *Id*. at 617.

The parties in this case dispute whether Ms. Connelly, who acted as a midwife to Lujano, is qualified to give expert testimony under Rule 702. As an initial matter, neither party has clearly explained what issues are at stake in Ms. Connelly's possible testimony. The Court infers from remarks in the parties' briefs, and from the sealed portions of Ms. Connelly's deposition, that Lujano experienced difficulties during a pregnancy and that Ms. Connelly advised bed rest due to "stressors" experienced in Lujano's work place. For example, Lujano stated in her Rule 26(a)(2)(C) disclosures that

> Ms. Connelly is expected to testify consistent with her deposition in this matter, and consistent with the medical records relating to Plaintiff, as well as her opinions that she placed Plaintiff on bed rest during her pregnancy because she was concerned about Plaintiff, Plaintiff's preterm labor, Plaintiff's report of work related stress, and that Plaintiff's work related stress could have been a cause of Plaintiff's preterm labor.

The Court also infers from Lujano's expert disclosures that she was treated by Dr. Eileen Murphy during her pregnancy.

Lujano argues at some length that Ms. Connelly's testimony should not be barred because she will not be called at trial to rebut testimony given by Dr. James Cavanaugh and Dr. Orest Wasyliw – Defendants' own designated experts – concerning how Lujano's work-related stress affected her pregnancy; Lujano contends that Drs. Cavanaugh and Wasyliw are not qualified to testify on this issue because they are not trained in caring for pregnant women. This argument misses the mark, however, because the relevant issue is not the qualifications of Defendants' experts, but the those of Ms. Connelly herself.[1]

Unfortunately, Lujano provides little evidence on this crucial issue. She briefly contends that Ms. Connelly meets the standard for Rule 702 because she has a four-year undergraduate degree in science and nursing, two years of training as a midwife, and five years of midwife experience. In support, she directs the Court's attention to portions of Connelly's deposition that were filed *in camera*. However, Ms. Connelly's testimony largely duplicates what Lujano states in her brief: Ms. Connelly received four years of undergraduate training in nursing, two years of

---

[1] Lujano also makes much of the fact that she identified Ms. Connelly as a witness under Rule 26(a)(2)(C). The 2010 amendments to Rule 26 provide that expert witnesses who are not specially employed or retained, and who do not regularly give expert testimony, must provide (1) the subject matter of their testimony and (2) a summary of the facts and opinion to which they will testify. Fed. R. Civ. P. 26(a)(2)(C). However, they need not provide the written expert report required for other witnesses identified under Rule 26(a)(2)(B). The Advisory Committee Notes make clear that witnesses under Rule 26(a)(2)(C) can testify both as fact witnesses and as expert witnesses. The reasons for Lujano's reliance on this provision, both in her brief and at the hearing, are unclear, as she does not argue that the 2010 amendments altered the standard for qualifying an expert witness under *Daubert*.

education as a midwife, and is licensed as a midwife by the State of Illinois. She does not identify the institutions involved, nor does she provide any clear explanation of her work as a midwife. Instead, she states only that she started her first job "at Erie" in December 2007 and has worked continuously since that time, except for three-months of maternity leave.

The Court finds this explanation of Ms. Connelly's qualifications insufficient for her to testify as an expert witness. Lujano cites *United States v. Withorn*, 204 F.3d 790 (8th Cir. 2000) for the proposition that a midwife can testify as an expert under Rule 702. In itself, that is not a remarkable conclusion, and it is certainly not determinative of the issue presented here; nurses, midwives, and other health care professionals can give expert testimony if they meet the standards for doing so under Rule 702. Indeed, the Advisory Committee Notes for the 2010 amendments to Rule 26 refer to experts such as "physicians *or other health care professionals*" (emphasis added). It is well established that qualifying as a testifying expert is not a function of specific academic credentials. Rather, "anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) ("The notion that *Daubert* . . . requires particular credentials for an expert witness is radically unsound").

However, the flexibility afforded to experts does not allow Ms. Connelly to testify as such without some showing that she has the training and experience necessary to give reliable testimony that could aid the trier of fact. Ms. Connelly overlooks that such expertise was demonstrated in *Withorn*, which describes the midwife in that case as a certified nurse midwife

who practiced in both clinical and hospital settings. The midwife who testified in *Withorn* also gave "a detailed description" of her experience and training, including "special training" she received in the specific issue at stake, a rape examination. *Withorn*, 204 F.3d at 797. By contrast, Lujano does not provide any discussion of what Ms. Connelly's practice has involved since she was certified, any professional organization she belongs to, or where she has worked, other than the unexplained remark that her first job was "at Erie." Insofar as other, unspecified portions of Ms. Connelly's deposition may clarify this issue, the burden for presenting such information lies with Lujano. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (stating that a court is "not required to scour the party's various submissions to piece together appropriate arguments"). The Court notes that the deposition submitted by Lujano refers to a resume that was provided to opposing counsel at the deposition that presumably laid out Ms. Connelly's training and experience in greater detail. Lujano, however, did not include the resume as part of the transcript provided to the Court. As a result, the Court has little understanding of when or where Ms. Connelly was trained or where she has practiced.

Ultimately, "whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). The guiding inquiry is not whether the "expert is qualified in general, but whether his or her qualifications provide a foundation for [him or her] to answer a specific question." *Gayton*, 593 F.3d at 617. Even when the purported expert is a licensed physician, *Gayton* points out that a doctor in general practice may or may not have the required expertise to

testify on specific medical questions. Instead, courts must carefully inquire as to whether the physician has "the adequate education, skill, and training" to answer specific inquiries. *Id*.

In this case, Lujano has not shown how her training and experience as a midwife give her the requisite expertise to testify on the topic identified in Lujano's Rule 26(a)(2)(C) disclosure – "that Plaintiff's work related stress could have been a cause of Plaintiff's preterm labor."[2] The Court cannot find that Ms. Connelly is qualified to testify as an expert without any understanding of when or where she was trained as a nurse or as a midwife, what experience she has had in treating pregnant women undergoing significant stress, or what specific education she has received for understanding preterm labor. The Court recognizes that an expert's proposed testimony need not always overlap with her experience "in both kind and degree." *Paine ex rel. Eilman v. Johnson*, No. 06 C 3173, 2010 WL 785398, at *2 (N.D. Ill. Feb. 26, 2010). But the gatekeeping function that is part of a court's duty under Rule 702 would be meaningless if every potential witness were deemed to be an expert without any evidence showing what the overlap between training and testimony actually involves.

Thus, Ms. Connelly may not testify as an expert on either the relation between stress and pregnancy or the effect that Lujano's alleged work-related stress had on her pregnancy. She may, however, testify as a fact witness concerning what she observed and the actions she took as

---

[2] The parties limit their arguments to the issue of Ms. Connelly's qualifications, but Lujano must also show that her testimony would assist the trier of fact in understanding the evidence in this case. *Cummins*, 93 F.3d at 367-68. It is difficult to understand how Ms. Connelly could testify on the issue identified in the Rule 26(a)(2)(C) disclosures because she clearly stated in her deposition that "[w]e don't know what causes preterm labor." Thus, the Court cannot conclude that, even if she were qualified as an expert, Ms. Connelly's testimony would meet the second part of the analysis that applies to expert witnesses.

part of Lujano's treatment. For these reasons, Defendant's *Daubert* Motion to Bar Desiree Connelly's Expert Opinions (Doc. #360) is granted.

                                  **ENTER ORDER:**

                                              **MARTIN C. ASHMAN**

**Dated:** December 6, 2011.                                       United States Magistrate Judge