# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JANIDET LUJANO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 4822 |
| v. | ) | |
| | ) | Magistrate Judge |
| **TOWN OF CICERO**, *et al.*, | ) | Martin C. Ashman |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janidet Lujano ("Lujano") has sued the Town of Cicero and various individuals (collectively "Defendants") for employment-related discrimination, bringing claims under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as state law claims for assault and the intentional infliction of emotional distress. Currently before the Court is Defendants' motion for discovery sanctions. The Defendants argue that Lujano improperly delayed producing discoverable information that should have been turned over to them at an earlier date pursuant to Fed. R. Civ. P. Rule 26. The parties have consented to have this Court conduct all proceedings in this case, including the entry of final judgment pursuant to 28 U.S.C. § 636(c) and N.D. Ill. R. 73.1(c). For the reasons set forth below, this Court finds that Defendants' motion should be granted in part and denied in part.

# I. **Legal Standard**

Federal Rule of Civil Procedure 26(a) requires a party to disclose the name and address of each individual who has discoverable information concerning that party's claims, to provide copies of all documents that relate to such claims, and to turn over all documents that are used to compute each category of damages claimed by a party. Fed. R. Civ. P. 26(a)(1)(A). Parties are also subject to an ongoing duty to timely supplement all discovery requests "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Incomplete or evasive answers are treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). Rule 37(c) states that if a party fails to meet these requirements, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Seventh Circuit has made clear that the exclusion of evidence "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). Such a determination is left to the "broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996). Although a court is not required to make explicit findings concerning such justification, it should consider: (1) the prejudice or surprise that results to the party adversely affected by the information; (2) the ability to cure any

prejudice; (3) the possibility of a disruption to the trial;[1] and, (4) the bad faith or wilfulness in not disclosing the information earlier. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995).

## II.   Discussion

The facts underlying Lujano's complaint have already been set forth in the District Judge's prior order denying Defendants' motion for summary judgment, and the Court does not restate them at length here. In short, Lujano was hired as an officer for the Town of Cicero's auxiliary police force in June 2005. She alleges that the Town's President, Larry Dominick, and the Town's Superintendent, Moises Zayas, sexually harassed her and that she was demoted for refusing their advances and for engaging in protected free speech.

Lujano filed her initial complaint in August 2007. Defendants issued their first requests for production either in late 2007 or early 2008 and received Lujano's response to them on February 19, 2008. Substantial discovery and motion practice ensued, and Lujano subsequently filed two amended complaints. However, Defendants state that it was not until July 25, 2011 that Lujano finally disclosed a number of documents, or provided certain information, that were responsive to their original requests. Defendants contend that these include: (1) Lujano's resume and job search documents; (2) documents indicating that she attended Northwestern College; (3) portions of her 2008 and 2009 tax returns; (4) medical records concerning treatment received in July and August 2010; and, (5) affidavits by Ana Maria Rojas, Roberto Garcia, Gerardo Meza, Joel Serrano, Ivan Ochoa, Jose del Angel, Tony de Leon, and Wayne Bancroft.

---

[1] All parties agree that the third factor is not met in this case, as no trial date has been set.

In response, Lujano provides a detailed statement of the procedural history of this case, most of which has no direct relevance to the merits of Defendants' claims. In the course of rehearsing almost fours years of litigation history, Lujano defends her actions in part by arguing that Judge Bucklo re-opened discovery on Lujano's second amended complaint after it was filed on December 15, 2009, and that fact discovery has not been closed in this case. According to Lujano, this allowed her to supplement her original discovery responses in a timely manner.

The Court is troubled by this claim, which Lujano fails to support with any evidence. Judge Bucklo clearly ordered that all fact discovery was to have closed on March 20, 2009. *See* Docket Entry No. 138. The electronic docket sheet for this case does not show that general fact discovery was re-opened after the second amended complaint was filed or that such discovery is ongoing at this point. Indeed, all discovery was closed on August 3, 2009, before Lujano even filed her second amended complaint. *See* Docket Entry No. 177. While it is true that Judge Bucklo re-opened discovery for very limited purposes after the filing, particularly on issues relating to expert witnesses, the docket entries in this case do not show that she permitted any discovery "on" the second amended complaint or ordered general fact discovery to continue, as Lujano claims.[2] Insofar as Judge Bucklo allowed such discovery in an oral ruling that is not reflected in the case's electronic docket sheet, the responsibility for providing evidence of such an order lies squarely with Lujano. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.

---

[2] Defendants clarify that Judge Bucklo re-opened discovery in 2010 "solely to the disbanding of the auxiliary police force and the subsequent hiring of community service officers," though they do not cite any docket entry concerning this order. Reply at 2. Even assuming that discovery was allowed on this limited issue, it has no bearing on the documents presented in this motion, or on Lujano's much broader claim that general fact discovery was allowed on the second amended complaint.

1995) ("[A court] is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case").  Setting aside this part of Lujano's argument, the Court turns to the documents in question.

### A.    The Resume and Employment Documents

Defendants' first request for documents sought all items concerning Luajno's damages, as well as those "related to any search for employment by Plaintiff from the date of the alleged misconduct to the present."  Def's. Mot. at Ex. 16.  Lujano's July 2011 submission to Defendants included for the first time her resume, together with emails concerning applications for employment that Lujano submitted to several potential employers, including the United States Post Office, the University of Illinois, and Rush University Medical Center.  Each email is dated in the summer or fall of 2009.  *Id.* at Ex. 2.  Lujano eventually obtained employment with Midwest Foods, but then resigned that position on August, 27, 2010 in order to attend school.

Lujano defends her production, in part, on the inexplicable ground that many potential employers do not provide a receipt for a job application, and "there are no documents to be produced."  Plt's. Resp. at 17.  Clearly, Lujano *did* receive the six receipts shown in Defendants' Exhibit 2, and she fails to state why they could not have been produced as soon as she received them by email in the summer and fall of 2009.  Lujano contends that she was not required to do so before July 2011 because Defendants did not raise the affirmative defense of the mitigation of damages until the Town of Cicero filed its answer to the second amended complaint on December 23, 2010.   This argument fails because, even if the mitigation defense were determinative of this issue, Lujano fails to explain why she waited seven months after the

affirmative defense was asserted to produce her documents. More importantly, she overlooks that Defendants' discovery requests specifically asked for documents concerning Lujano's attempts to obtain employment. The documents she produced are directly relevant to this request, and she was required to produce them in a timely manner.

Lujano claims that Defendants have not been prejudiced by her delay because it "is an obvious conclusion" that she would look for employment after losing her job. *Id.* She also argues that material from her Facebook page, which Judge Bucklo earlier ordered her to produce, showed that she was looking for a job. These arguments are without merit. Defendants were not obligated to speculate about whether Lujano would actively seek employment merely because she was currently without a job. Nor does the Facebook page, or at least that portion of it that has been submitted to the Court, include the specific information contained in the employment information Lujano eventually provided to Defendants. Instead, the January 2011 Facebook page cited by Defendants in their Reply merely states, "At school, then off to see about a JOB!!!!" Def's. Reply at 7. This entry provides no specific information about Lujano's efforts to obtain employment at all. Moreover, it postdates her job applications in the summer and fall of 2009 by sixteen months.

Defendants argue that they have been prejudiced because they were precluded from fleshing out information concerning Lujano's job efforts while fact discovery was still ongoing or from using this information in the expert depositions. Defendants points out that Lujano's expert, Dr. Louise Fitzgerald, testified that Lujano was so depressed from her experience with the Town of Cicero that she had difficulty in functioning fully. The Court omits a discussion of Dr. Fitzgerald's deposition, as it was filed under seal. However, the Court agrees in broad terms

with Defendants' claim that discovery that could have been developed at an earlier stage was not available to them. Such discovery can be conducted at this point only if it is re-opened long after both the parties and the Court assumed that it was closed. Even then, the parties would be able to conduct discovery that should have been done earlier only at considerable additional expense.

In the absence of any reasoned explanation by Lujano as to why she did not produce this information at an earlier time, the Court concludes that her delay in doing so was wilful in nature. "[W]ilfulness and bad faith are associated with conduct that is intentional or reckless[.]" *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000); *see also Northington v. H & M Int'l*, No. 08 C 6297, 2011 WL 663055, at *13 (N.D. Ill. Jan. 12, 2011) ("'Wilfulness' and 'bad faith' are characterized by conduct which is either done intentionally, for the purpose of hiding adverse information, or in reckless disregard of party's obligations to comply with a court order" or a discovery requirement). Accordingly, the Court finds that Rule 37(c) prohibits Lujano from using any document contained in Defendants' Exhibit 2 as evidence in this case.


## B.    School Applications

The Defendants also object to four pages of documents created in 2010 that reflect Lujano's attendance at Northwestern College and the financial aid she received to fund her education there. Def's. Mot. at Ex. 3. Lujano relies on the same arguments asserted for the employment documents to claim that Defendants could have gleaned the fact that she was attending school from her Facebook page. The Court finds this argument unpersuasive for the reasons stated above. Lujano claims that no prejudice results from her late production because the parties agreed that they would supplement their discovery. The relevance of this claim is

unclear, as discovery supplementation is not a voluntary act indicating good will, but a mandatory duty under Rule 26(e). Regardless of whether Lujano agreed to do so or not, Defendants' point is that she failed to comply with her obligation to supplement her discovery responses in a timely manner, as mandated by Rule 26(e). The Court finds her failure to produce these documents to be wilful, and Lujano is precluded from using them as evidence in any subsequent motion or at trial.

### C. Financial Records

Lujano also turned over her tax returns for 2008 and 2009 as part of her July 2011 production. Def's. Mot. at Ex. 4. The production apparently also included W-2 statements reflecting income she received from the Town of Cicero in 2009, but Defendants only contest the tax records themselves. Lujano provides no reason for the late disclosure of these records, but she claims that Defendants have not been prejudiced because the information she produced was part of the Town's records concerning the payment of her wages. While this may be true of the W-2 forms, which are not at issue here, there is no reason to believe that Defendants had access to Lujano's other financial information. Defendants argue that they have been prejudiced because they could have used information contained in the returns to challenge her claim that she was unable to afford counseling to ease her emotional distress.

The Court finds Defendants' argument to be only partially persuasive. The 2008 tax return attached to Defendants' motion is unredacted, at least as it concerns Lujano's income. The return shows that Lujano's adjusted gross income for 2008 consisted only of the amount listed on line 7, which reflects the wages that would have also been indicated in her W-2 forms. Defendants do

not dispute Lujano's claim that they had copies of her W-2 forms at all relevant times. As a result, they have failed to show what information they could have used as part of the earlier fact and expert witness depositions.

By contrast, Lujano's 2009 tax return is redacted. It indicates that her line 7 wages amounted to $12,427, but Lujano's income from unemployment compensation has been marked out. Lujano argues that Defendants have not been prejudiced by this omission because unemployment benefits cannot be used as a set off towards her potential damages. That is not Defendants' argument, however; they claim that the late production of the 2009 return prevented them from inquiring into Lujano's claim that she could not afford counseling to ameliorate her alleged emotional distress caused by the Defendants' actions. The Court agrees with the Defendants and finds that Lujano's failure to produce these returns at an earlier date was wilful. She is precluded from using the 2009 return as evidence in this case. She may, however, use the 2008 return.

### D. Medical Records

Defendants claim that Lujano also produced medical records concerning treatment she received in July and August 2010 as part of her July 2011 document production. Defendants' explanation of these records, which are attached to their motion as Exhibit 5, is less than clear. As the Court understands it, Defendants claim that Lujano previously produced at least one of these items as Bates No. 0675. Lujano appears to agree that she produced that document, which indicates that Lujano saw psychologist Dr. Hobfill on two occasions in June and July 2009. The Court presumes that the remaining three documents (Bates 1075, 1076, and 1086) are the

contested items. Bates 1075 is a later version of Bates 0675, and shows that Lujano also saw Dr. Hobfill on three dates in July and August 2010. Bates 1086 provides treatment notes for these dates, and Bates 1075 is a discharge sheet from Northwest Memorial Hospital's Emergency Department.

Lujano provides no explanation of why these documents could not have been produced earlier, relying instead on various claims that Defendants already knew that she was seeing Dr. Hobfill. But without records of all her relevant treatment history, Defendants were clearly at a disadvantage by not being able to evaluate these documents or to include them as part of expert discovery. The documents in question are sealed, but the Court's review of them shows that Bates Numbers 1076 and 1086 could have been of some use to Defendants in the expert reports and depositions that have now been completed. The emergency room discharge note, however, contains virtually no factual information, and the Court fails to see how any prejudice resulted from Lujano's late production of Bates 1075.

In defense, Lujano reverts to her earlier claim that Judge Bucklo re-opened fact discovery on her second amended complaint "without setting a schedule on the new issues raised" in it. Plt's. Resp. at 20. Even if Lujano produced evidence to support this allegation, it would not act as a defense to her tardy disclosure. Lujano had already produced at least some of her medical records to Defendants, and Rule 26(e) required her to supplement those responses as the medical records were updated over time. Lujano could not be anything other than fully aware that she saw Dr. Hobfill in July and August 2010, and Rule 26(e) did not allow her to sit back until July 2011 and withhold records that she knew were relevant to this litigation. The Court finds that her failure to do so constitutes bad faith, and she may not use Bates 1076 or Bates 1086 as evidence

in this case. Given the lack of prejudice stemming from Bates 1075, however, she may use that document.

### E.   Affidavits

In the individual Defendants' First Set of Interrogatories, Defendants asked Lujano to identify all persons with knowledge about the facts underlying her allegations, persons who would be called as witnesses at trial, opinion witnesses, and all persons with whom Lujano had communications concerning the facts alleged in her complaint. In response, Lujano referred Defendants to her initial Rule 26 disclosures for each of the interrogatories in question. *See* Def's. Mot. at Ex. 6. Those disclosures identified a wide range of individuals, including Ana Maria Rojas, Roberto Garcia, Gerardo Meza, and Joel Serrano. As part of her July 2011 documents production, Lujano turned over to the Defendants affidavits by each of these four individuals. Each of the affidavits was executed in 2010. Although they do not concern Lujano specifically, each presents detailed descriptions of alleged wrongdoing by some of the Defendants, particularly by Town President Larry Dominick. Lujano also produced affidavits by Ivan Ochoa, Jose del Angel, Tony de Leon, and Wayne Bancroft, none of whom had been previously identified in the Rule 26 disclosures.

Defendants argue that all of these affidavits should be barred from further use in this proceeding. The Court agrees concerning the four affiants who were not identified in Lujano's Rule 26 disclosures – Ivan Ochoa, Jose del Angel, Tony de Leon, and Wayne Bancroft. Lujano has not presented any reason why these individuals were not identified prior to the July 2011 production. Lujano argues that Defendants have not been prejudiced by her failure to do so

because the affidavits of Ochoa and de Leon were produced in a similar case involving the same counsel for all parties, *Rojas v. Town of Cicero*, No. 08 C 5913, (N.D. Ill. 2008). However, this argument overlooks Defendants' underlying point. Even if they knew of the affidavits filed in *Rojas*, Defendants had no reason to suppose that Lujano would use them in this case, or that she would call on Ochoa, del Angel, de Leon, or Bancroft for evidence. Lujano did not identify these individuals in her Rule 26 disclosures, and she could not add names to those disclosures at trial without a timely supplementation pursuant to Rule 26(e). "A party cannot get around the obligations imposed by Rule 26(a)(1) and Rule 26(e) by adding a name to its pretrial disclosure that has not previously been disclosed." *Mitchell v. Iowa Interstate RR Ltd.*, No. 07-1351, 2010 WL 2089305, at *2 (C.D. Ill. May 25, 2010) (barring the addition of undisclosed witnesses after fact discovery has closed). Thus, Lujano may not use the affidavits of Ochoa, del Angel, de Leon, or Bancroft as part of this case.[3]

Lujano is also prohibited from using the affidavit of Mr. Meza, whom Defendants did not depose as part of this case. Lujano claims that they took his deposition in his own case, but she

---

[3] Individuals who are not identified in Rule 26 disclosures are ordinarily prohibited from being fact witnesses at trial. *Wilson v. AM General Corp.*, 167 F.3d 1114, 1122 (7th Cir. 1999). Accordingly, Lujano may be prohibited from calling these four witnesses to testify at trial. However, courts have consistently found that a party need not supplement its Rule 26 disclosure of a witness, if the witness is identified during a deposition. *See, e.g., Buffone v. Rosebud Restaurants, Inc.*, No. 05 C 5551, 2006 WL 2425327, at *3 (N.D. Ill. Aug. 21, 2006). Lujano suggests in her response that one or more of the individuals in question were identified during depositions in this case. The depositions in question, however, are not before the Court. Thus, the Court is unable to determine the context in which the individuals were identified or the extent to which their identification relates to claims in this case as opposed to the *Rojas* case. As Defendants have not asked the Court to bar Ochoa, del Angel, de Leon, or Bancroft from testifying at trial, and as Lujano was not on notice that such an issue was at stake in the instant motion, the Court does not address at this time whether the failure to identify these individuals in the Rule 26 disclosures bars them from testifying at trial. The parties may raise this issue in their pretrial motions.

fails to state what claims Meza brought in that suit, when the deposition took place, or what relation Meza's suit had to Lujano's own claims. Thus, the Court has no basis on which to conclude that Defendants were able to explore issues that could be relevant to Lujano's case as part of their earlier deposition of Meza. Defendants state in their reply that they did not have an opportunity to interview Meza in relation to the new affidavit, and Lujano did not dispute this claim at the hearing. Lujano relies on the fact that Defendants were aware of Meza's affidavit because it was produced in *Rojas*, and the fact that the attorneys in that case are the same as those here. However, the Court's review of *Rojas* shows that the affidavit was produced on January 3, 2011, long after fact discovery in this case had already closed. Thus, Defendants did not have an opportunity to depose Meza in this case concerning claims in his affidavit. Lujano is barred from using Meza's affidavit as evidence in this case.

Defendants' argument concerning the remaining affidavits is less persuasive. Lujano identified Rojas, Garcia, and Serrano as part of her Rule 26 disclosures. She argues that Defendants have not been prejudiced by her late production of the affidavits of these individuals because all four affidavits were produced in *Rojas*, that Defendants were fully aware of their existence, and that they deposed Garcia and Rojas in this case.

The Court agrees with Lujano concerning Garcia and Rojas because Defendants have not shown how they are prejudiced by the late production of their affidavits. Lujano points out that Defendants have already taken the depositions of these two witnesses, neither of whose affidavits provides testimony concerning Lujano herself. Defendants contend that they have been prejudiced by all eight of the affidavits in question because they suggest that Lujano is changing the nature of her claims; she earlier alleged political retaliation based on non-support for Larry

Dominick, but is now claiming that retaliation was based on the withdrawal of previous support that individuals like Garcia and Rojas gave to the Town President.

This argument is without merit as it relates to Rojas and Garcia because their affidavits do not involve the kind of allegations cited by Defendants. Moreover, Lujano remains bound by the claims asserted in her second amended complaint. The political retaliation claims alleged there are substantially similar to those that Lujano raised in her original complaint, and Defendants were fully aware of them when they deposed Rojas and Garcia. Defendants fail to point to any specific portion of the affidavits given by Rojas and Garcia that would have altered the nature or scope of their depositions, nor do they state what they would have done differently during the depositions if they had known of the affidavits. Given that Defendants deposed these previously-identified witnesses, they have not shown why Lujano should be barred from using the affidavits of Rojas or Garcia.

The Defendants have also failed to show why prejudice results from Serrano's affidavit. Serrano testified that he returned home on August 18, 2010, found Ms. Kurtz waiting for a signature on a declaration, and mistakenly dated it "April 18" instead of "August 8, 2010." Def's. Mot. at Ex. 11. The Court presumes that Ms. Kurtz is Lujano's counsel, Dana Kurtz. But Defendants have not informed the Court of what the declaration in question involved, how it relates to Lujano's claims, or why they have been prejudiced by testimony concerning Serrano's mistake in dates. On its face, the fact that Serrano misdated a declaration – which is the sole fact averred in his affidavit – indicates no prejudice at all.

Accordingly, Lujano may use the affidavits of Rojas, Garcia, and Serrano, but she may not use those of de Angel, de Leon, Meza, Ochoa, or Bancroft.

### III. Conclusion

For all these reasons, Defendants' Motion for Sanctions (Dckt. #358) is granted in part and denied in part. Lujano is prohibited from using those items described above that were part of her July 2011 document production as evidence in any proceeding in this case, including trial.

**ENTER ORDER:**

_____

**MARTIN C. ASHMAN**

**Dated:** December 23, 2011.        United States Magistrate Judge