**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANIDET LUJANO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 07 C 4822** |
| **v.** | ) | |
| | ) | **Magistrate Judge Finnegan** |
| **TOWN OF CICERO, *et al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janidet Lujano ("Lujano") has sued the Town of Cicero ("the Town") and several of its officials – the Town's President, Larry Dominick ("Dominick"), the Town's Superintendent of Police, Anthony Iniquez ("Iniquez"), the Superintendent of the Town's Auxiliary Police Force, Moises Zayas ("Zayas"), and the Deputy Superintendent of the Town's Auxiliary Police Force, Serge Rocher ("Rocher") – for violating her constitutional rights under 42 U.S.C. § 1983.[1] Lujano also asserts claims under Illinois law for intentional infliction of emotional distress and assault and battery. In brief, she claims that over a number of years she was sexually harassed by Dominick and Zayas, and that she was demoted in retaliation for refusing their advances. In addition, she alleges that she was demoted on account of her gender and because of her refusal to engage in political activities for Dominick, and was subjected to even further retaliation after she came forward with these allegations.

---

[1] Iniquez has since retired from his position. Zayas is deceased but his spouse is serving as a substitute party, though she has not joined in the motion now before this Court. (Doc. 231; Doc. 436, at n.1).

On March 5, 2010, District Judge Elaine Bucklo denied a motion filed by the Town, Iniquez, and Rocher seeking summary judgment on certain counts. (Doc. 276). On June 23, 2011, the parties consented to have Magistrate Judge Martin Ashman conduct all further proceedings in the case. (Doc. 352). All Defendants (except Zayas) subsequently moved for summary judgment, asserting Lujano lacks standing and is judicially estopped from suing because she filed for bankruptcy in 2007 and never disclosed this lawsuit in the bankruptcy filing. Alternatively, Defendants seek dismissal of the case as a sanction because Lujano did not disclose the bankruptcy in discovery responses. (Doc. 491). On June 12, 2012, the case – and responsibility for deciding the pending motion – was reassigned to this Court. (Doc. 439). For the reasons discussed below, the motion is denied.

## BACKGROUND

### A.    Filing of Lawsuit and EEOC Complaint

After she was initially terminated in January 2004, Lujano was re-hired as an officer for the Town's auxiliary police force in June 2005 and became an auxiliary sergeant in July 2006. (Doc. 1 ¶¶ 16, 18; Defs.' SOF ¶ 1). On August 27, 2007, Lujano filed her original complaint against the Town, Iniquez, Dominick, and Zayas, alleging misconduct after her re-hire, namely, sexual harassment, retaliation and demotion in violation of her Equal Protection and First Amendment rights under Section 1983. (Doc. 1). She also made claims of assault, battery and intentional infliction of emotional distress against the Town, Dominick and Zayas. (*Id.*). While still employed with the Town, Lujano amended her complaint on November 6, 2007 to include Rocher as a defendant in her intentional infliction claim, as well as her equal protection and first amendment claims.

2

Lujano also expanded her allegations of retaliatory conduct and emotional and physical damages, describing new alleged misconduct occurring between September and October 2007. (Doc. 45). She amended her complaint once again on December 15, 2009 to include allegations of continued harassment and retaliation in 2008 and 2009, including her termination on August 17, 2009 and the failure to hire her for other positions after this. (Doc. 236 ¶¶ 98-100, 102-110). Prior to bringing the lawsuit, Lujano filed a complaint against the Town with the EEOC, alleging sex discrimination, pregnancy discrimination, sexual harassment and retaliation from January 1, 2006 "and continuing." (Pl.'s SOF, Ex. E).[2] According to Lujano's attorney, the EEOC's investigation of the Town is ongoing. (*Id.*, Ex. D ¶ 2).

## B.    Filing of Chapter 7 Bankruptcy Petition

On November 27, 2007, Lujano filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. (*Id.*, Ex. A). She was represented by counsel who was not associated with the pending civil rights lawsuit. In Schedule B of the bankruptcy petition Lujano was required to list all personal property that she possessed at the time of filing, including "contingent and unliquidated claims of every nature," and to indicate their estimated value. In response, Lujano stated "Debtor has filed a complaint with EEOC for sexual harassment." (*Id.*, Ex. A, at 10). She indicated that the current value of this interest was "Unknown." (*Id.*). On Schedule C, Lujano listed property that she was claiming as

---

[2]    The record includes a copy of the "Third Amended Charge of Discrimination" dated December 10, 2009 and filed with the Illinois Department of Human Rights and EEOC. (Pl.'s SOF, Ex. E). It is unclear from the record exactly when the initial EEOC charge was filed.

"exempt" and included the EEOC complaint for sexual harassment as an exempt contingent claim. (*Id.*, Ex. A, at 12). In her "Statement of Financial Affairs," Lujano was required to "list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (*Id.*, Ex. A, at 30) (emphasis omitted). Lujano indicated "None." (*Id.*). Lujano declared under penalty of perjury that the information set forth in this Statement and her schedules was true and correct. (*Id.*, Ex. A, at 28; Defs.' SOF ¶¶ 10-12).

On January 7, 2008, the bankruptcy court closed Lujano's Chapter 7 case with a "no asset" finding. (Defs.' SOF ¶ 14). She was discharged from bankruptcy proceedings on February 19, 2008. (Pl.'s SOF, Ex. K). At the time, she owed $24,844 to creditors holding unsecured nonpriority claims, and $7,000 to creditors holding unsecured priority claims. (*Id.*, Ex. A, at 6).

## C.    Reopening Bankruptcy Case and Conversion to Chapter 13

Defendants state that they first learned of Lujano's November 2007 bankruptcy filing in January 2012. (Doc. 401, at 1). Shortly after, Defendants sought leave to file a motion for summary judgment based on the omission of the federal lawsuit from the bankruptcy filing. Leave was given, and Defendants filed a motion for summary judgment on February 1, 2012. (Docs. 400, 401).

On February 28, 2012, Lujano (represented by a new bankruptcy attorney) filed a "Motion to Reopen Case" and a "Motion to Convert to Chapter 13" with the bankruptcy court. (Pl.'s SOF, Ex. C; Docs. 18, 19). Notice of these motions was sent to Lujano's creditors and the U.S. Trustee. (*Id.*). In her motion to reopen the bankruptcy case Lujano disclosed:

- She previously had filed for relief under Chapter 7 on November 27, 2007 and had listed "an EEOC claim she had against her former employer" on Schedule B.

- "At the time of filing her bankruptcy petition, the Debtor had filed a suit" in federal court "naming the Town of Cicero and others as defendants (case number 07 C 4822)."

- The bankruptcy court had entered an order discharging the Debtor on February 19, 2008.

(Bankr. Doc. 18). Lujano's motion said that "[u]pon entry of an Order reopening this case, the Debtor will file Amended Schedules B, I and J[,]" and that she "desires to convert this case to Chapter 13. She intends to pay unsecured creditors 100 percent under her proposed plan." (*Id.*). Approximately one week later, the bankruptcy court entered an order granting the motion to reopen the bankruptcy case. (Pl.'s SOF, Ex. F).

In her separate motion to convert to Chapter 13, Lujano said she had filed for relief under Chapter 7, the case had not previously been converted, and Lujano was eligible to be a debtor under Chapter 13. (Bankr. Doc. 19). On March 7, 2012, the bankruptcy court entered an order granting the motion to convert to Chapter 13. (Pl.'s SOF, Ex. G). Coincidentally, this was the same day that Lujano was due to file a response to the pending motion for summary judgment in the district court. (Doc. 400). Rather than file, Lujano sought an extension of time, noting (among other reasons) that her attorney had requested and just received the bankruptcy file from Lujano's prior bankruptcy counsel and was "still investigating this matter." (Doc. 403). Plaintiff ultimately filed her response to the motion for summary judgment on May 18, 2012. (Doc. 432).

On March 21, 2012, Lujano filed her proposed Chapter 13 Plan with the bankruptcy court. The Plan indicated that she would not receive a discharge from her debts (as she

had with the Chapter 7 bankruptcy) and instead would be required to make certain monthly payments to the trustee and then to general unsecured creditors. The Plan indicated that the unsecured creditors would receive 100% of their allowed amount. (Bankr. Doc. 26, at 2-5). In a modified Chapter 13 Plan dated May 1, 2012, Lujano added as a "special term" a provision that "[a]ny proceeds received by the Debtor pursuant to her EEOC claim or lawsuit against the Town of Cicero shall be forwarded to the Trustee for distribution to creditors." (Bankr. Doc. 41, at 5).

Lujano also filed an Amended Statement of Financial Affairs and Personal Property and amended schedules. Instead of answering "None" to the question about suits and administrative proceedings in which she was a party (as she had before), Lujano identified her pending civil rights lawsuit against Defendants, as well as the EEOC charge. (Bankr. Doc. 35; Pl.'s SOF, Ex. H., at 2-3). On Schedule B (Personal Property), under "[o]ther contingent and unliquidated claims," Lujano indicated: "Civil Rights, State Law and EEOC Claims. Case number 07 C 4822" and listed the parties in this lawsuit. (*Id.*, Ex. I, at 2). On Schedule C (Property Claimed as Exempt), Lujano also indicated "Civil Rights, State Law and EEOC Claims" (not simply the EEOC complaint as before) but this time estimated the value of the claimed exemption as $0. (*Id.*, Ex. I, at 4).

On June 19, 2012, Lujano filed a motion to vacate her prior discharge for debtor in the Chapter 7 case, stating that she desired to convert the case to Chapter 13 and intended to pay unsecured creditors 100% under her proposed plan. (Bankr. Doc. 56). On July 12, 2012, the bankruptcy court granted this motion, and a notice was issued to creditors and parties in interest that the discharge had been vacated. (Bankr. Docs. 60, 61). That same day, the bankruptcy court entered an order confirming the modified Chapter 13 Plan. The

court's order stated that all property of the estate "will continue to be property of the estate following confirmation" unless the plan provided for surrender of the property or the property was sold pursuant to the plan or court order.  (Bankr. Doc. 59).

**D.    Affidavits from Lujano and Attorney Kurtz**

In opposition to the pending motion, Lujano has submitted an affidavit stating that she informed her prior bankruptcy attorney about both the lawsuit and the charge filed with the EEOC and relied on him to "properly file the bankruptcy petition on my behalf knowing this information."  (Pl.'s SOF, Ex. B ¶ 2).  Lujano further states that she did not inform Ms. Kurtz, her counsel in this lawsuit, about the bankruptcy filing because she did not think it was relevant to the lawsuit.  (*Id.*, Ex. B ¶ 5).  Lujano then states that she never intended to evade her debts or defraud her creditors.  (*Id.*, Ex. B ¶ 9).

Attorney Kurtz submitted her own affidavit, attesting that Lujano never informed her of the bankruptcy filing.  (*Id.*, Ex. D ¶ 5).  Ms. Kurtz also states that neither Lujano's prior bankruptcy attorney nor the bankruptcy trustee contacted her "to inquire into the merits of Ms. Lujano's claims made in her EEOC Charge, in this lawsuit, or otherwise."  (*Id.*, Ex. D ¶ 4).

**E.    Lujano's Discovery Responses**

During the discovery phase of this case, Defendants served interrogatories asking Lujano to identify "all lawsuits, claims and/or grievances which Plaintiff has filed or to which she has been a party." (Defs.' SOF, Ex. 8 ¶ 3 and Ex. 9, Inter. 2).  In February 2008, Lujano responded: "Subject to said objections and without waiver, the instant lawsuit is the only lawsuit that Plaintiff has filed alleging complaints of sexual harassment, discrimination, and/or retaliation." (Defs.' SOF, Ex. 8 ¶ 3).  In May 2008 (a few months after her discharge

from the Chapter 7 bankruptcy), Lujano supplemented this response, indicating that she had also been a plaintiff in a personal injury suit that had settled. (*Id.*, Ex. 14 ¶ 3). Lujano did not identify the bankruptcy proceeding in response to this interrogatory.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court views all facts in the light most favorable to Lujano as the nonmoving party and draws all justifiable inferences in her favor. *Id.* at 255. Not all factual disputes will preclude summary judgment; a genuine issue of material fact exists only where there is sufficient evidence for a jury to "reasonably find for the [nonmoving party]." *Id.* Instead of relying on mere allegations, both sides must support their factual assertions with "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007). The nonmoving party can escape summary judgment by producing specific evidence that demonstrates why a genuine fact issue exists for trial. *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008).

## DISCUSSION

Defendants seek summary judgment on two grounds. First, they say Lujano lacks standing to litigate this case because she filed a Chapter 7 bankruptcy petition. Second, Defendants assert that Lujano is judicially estopped from pursuing her claims because she failed to disclose this lawsuit to the bankruptcy court. As an alternative to summary judgment, Defendants seek dismissal of the case as a sanction under FED. R. CIV. P. 37

because Lujano did not disclose the bankruptcy filing in her discovery responses. The Court addresses each of these arguments in turn.

## A.    Standing

A plaintiff's standing determines a court's jurisdiction to hear a suit and is an essential component of Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). As such, "standing must be present at all stages of the litigation." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010). A plaintiff has standing to sue when she alleges a "distinct and palpable injury" that is capable of being redressed if her request for relief is granted. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982).

Defendants do not appear to argue that Lujano lacks such constitutional standing, and her complaint clearly alleges an injury traceable to Defendants' actions. This Court instead understands Defendants to argue that Lujano lacks prudential standing because she is not the real party in interest. "Prudential standing considerations generally prohibit a litigant's raising another person's legal rights." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 751 n.1 (7th Cir. 2007) (internal quote and citation omitted). A plaintiff can allege an injury that satisfies Article III and still be without prudential standing when she does not assert her own legal claims or interests. *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). Unlike constitutional standing, defects in prudential standing do not act as limits on a court's subject matter jurisdiction. 6A Wright & Miller, Federal Practice and Procedure § 1542 (2d ed. 2009). As discussed below, Lujano's prudential standing to prosecute this lawsuit changed over time as the bankruptcy case evolved.

9

### 1.    Standing Upon Filing of Chapter 7 Bankruptcy Petition

There is no question that Lujano, upon filing a petition for bankruptcy under Chapter 7, lost standing to assert the claims alleged in this lawsuit on her own behalf.  All property belonging to the debtor, including all legal claims, become part of the bankruptcy estate as soon as the debtor files a petition for bankruptcy.  *See* 11 U.S.C. § 541(a)(1) (the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).  Therefore all of Lujano's causes of actions that had accrued at the time she filed her Chapter 7 petition in November 2007 became the property of her bankruptcy estate, and only the trustee had standing to prosecute those claims for the benefit of the estate. *See Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999) ("In liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate.").  *See also In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998); *In re Enyedi*, 371 B.R. 327, 332 (Bankr. N.D. Ill. 2007) ("Once a chapter 7 bankruptcy petition has been filed, the trustee holds the exclusive right to pursue the debtor's pre-petition causes of action.") (emphasis omitted).

### 2.    Standing After Chapter 7 "No Asset" Finding and Discharge

Lujano essentially concedes that she was not the real party in interest during the Chapter 7 proceeding but argues that she regained standing to sue when the bankruptcy court closed the Chapter 7 case with a "no asset" finding in January 2008.  At that point, she reasons, the trustee abandoned the federal lawsuit as an asset by not "administering" it, and so the asset reverted to Lujano.  (Doc. 432, at 3-4).

This Court is not persuaded that the trustee ever abandoned the federal lawsuit as an asset. Under the bankruptcy code "any property *scheduled* under section 521 (a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor...." 11 U.S.C. § 554(c) (emphasis added); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002).[3] The abandonment requirements of § 554 are "exacting" because they are designed to ensure that a debtor's creditors can benefit from all of the property that is available to meet their claims. *Morlan*, 298 F.3d at 618. When the statutory requirements for abandonment are not met, assets remain in the Chapter 7 estate permanently even after the debtor is discharged from bankruptcy. They do not revert to the debtor. 11 U.S.C. § 544(d); *Matthews v. Potter*, 316 Fed. Appx. 518, 521 (7th Cir. 2009) ("[I]f a legal claim is not scheduled or otherwise administered by the time the bankruptcy is closed, it forever remains property of the estate, and the trustee remains the real party in interest."). Here the civil rights lawsuit was not "scheduled" by Lujano since she omitted any mention of the multi-defendant suit in her bankruptcy schedules and other filings. As a result, the failure of the trustee to administer this asset did not constitute an abandonment. Instead, the lawsuit remained the property of the estate even after discharge. 11 U.S.C. § 554(c).

Lujano tries to avoid this conclusion by arguing that the lawsuit should be deemed to have been abandoned on two grounds that are not listed in § 554. Lujano first argues that she is not bound by § 554 because she informed her bankruptcy attorney about the

---

[3]    The trustee may also abandon (or be ordered to abandon) property that is "burdensome to the estate or that is of inconsequential value and benefit to the estate" after notice and hearing. 11 U.S.C. § 554(a) and (b). Lujano does not (and cannot) argue that the lawsuit was abandoned in this manner given the absence of notice and a hearing.

lawsuit and relied on his advice to schedule her bankruptcy assets. (Doc. 432, at 4) (citing Pl.'s SOF ¶¶ 2, 6). But even in a bankruptcy proceeding "bad legal advice does not relieve the client of the consequences of her own acts. A lawyer is the client's agent, and the client is bound by the consequences of advice that the client chooses to follow." *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) (rejecting a similar argument in a Chapter 7 case). Lujano signed her bankruptcy petition under penalty of perjury and stated that all of her responses were true and correct, including the statement that she was not a party to any lawsuits. (Pl.'s SOF, Ex. A, at 28). She is now bound by the information she provided to the bankruptcy court.

Lujano next asserts that it was sufficient for abandonment purposes that her schedule of personal property disclosed her filing of a "complaint with EEOC for sexual harassment." (Doc. 432, at 4). She reasons that the trustee had a duty to investigate and, had he done so, he would have learned of the claims in the civil rights lawsuit (First Amendment retaliation, assault, battery, and intentional infliction of emotional distress) that "arise out of the allegations in her EEOC charge." (*Id.*). This argument is also unpersuasive. It is true that a trustee is required under the Bankruptcy Code to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(4). Lujano's argument, however, pushes this requirement to an extreme and ignores the reality that trustees have limited time and money to devote to such efforts since investigatory funds are derived largely from the debtor's assets. *See In re Martin*, 141 B.R. 986, 997 (Bankr. N.D. Ill. 1992) ("Bankruptcy Trustees lack the time and resources to play detective and uncover all the assets and transactions of their debtors."); *In re Efoora, Inc.*, 472 B.R. 481, 492 (Bankr.

N.D. Ill. 2012) (Chapter 7 trustee "has no independent source of money to fund" investigations).

Bankruptcy courts have rejected the proposition that a trustee has a broad obligation to investigate "all leads in a case" or "to reconstruct a debtor's financial affairs." *In re Dec*, 272 B.R. 218, 231 (Bankr. N.D. Ill. 2001) (citing cases). Instead, the trustee is only required "to conduct searches that are realistic in the ordinary course of the trustee's performance of his duties." *Id.* This is especially true when the trustee has no reason to suspect that the debtor has failed to fully disclose the bankruptcy assets. *See In re Barman*, 252 B.R. 403, 416 (Bankr. E.D. Mich. 2000).

Lujano overlooks that the trustee's duty is limited, in part, because the debtor has an independent obligation to disclose *all* information that would assist the trustee in recovering the estate's assets. *In re Rest. Dev. Group, Inc.*, 402 B.R. 282, 287 (Bankr. N.D. Ill. 2009). Here Lujano was specifically asked to "list all suits" to which she had been a party within one year of the filing for bankruptcy, and she answered "None." (Pl.'s SOF, Ex. A, at 30). In light of this response, it was reasonable for the Trustee to conclude without further investigation that no lawsuit had been filed.[4] While Lujano discusses many cases in which trustees were found to have sufficient notice of claims based on less than

---

[4]        Lujano's reliance on *In re CXM, Inc.*, 336 B.R. 757, 761 (Bankr. N.D. Ill. 2006), for the proposition that a "debtor's schedules are not persuasive, let alone dispositive or controlling" (and so a trustee cannot rely on them without further investigation), is misplaced. (Doc. 432, at 4). There the court merely held that a debtor attempting to recover a pre-bankruptcy transfer of property or money from a creditor as a preferential transfer needed to establish (among other things) that the debtor was insolvent when the transfer occurred. In this context, the court said that, while a debtor is presumed to be insolvent during the ninety days prior to the bankruptcy petition filing date, the presumption is not conclusive and may be rebutted by the preference defendants. The court then discussed the definition of insolvency and various valuation methods and, not surprisingly, said a debtor may not rely on his own schedules to meet the debtor's burden of proving insolvency since such schedules "are not persuasive, let alone dispositive or controlling." *Id.*

full information, none involved a situation like this where a debtor failed to list a *pending* lawsuit on the schedules and elsewhere denied being a party to any lawsuits.

This Court finds that Lujano's disclosure of an exempt contingent claim (the EEOC charge) against the Town did not put the trustee on notice of a pending multi-defendant civil rights lawsuit. A trustee could reasonably conclude that when a debtor states that she has filed an EEOC charge and denies that she is a party to any lawsuits, this means that discrimination allegations are under investigation and that no lawsuit has been filed and may never be filed. Moreover, the multi-defendant civil rights lawsuit is more expansive than the EEOC charge. As noted previously, the abandonment requirements are exacting. Since Lujano did not "schedule" the lawsuit and it was unknown to the Trustee, no abandonment occurred. Instead, the claims alleged in the lawsuit remained part of the Chapter 7 bankruptcy estate at discharge, and only the trustee had standing to pursue the claims. *Morlan*, 298 F.3d at 618; *Vreugdenhyill v. Navistar Intern. Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991); *Williams v. United Techs. Carrier Corp.*, 310 F. Supp. 2d 1002, 1010 (S.D. Ind. 2004); *In re Enyedi*, 371 B.R. at 334.

### 3.  Standing After Conversion to Chapter 13

Despite her lack of standing following the Chapter 7 discharge in 2008, Lujano continued to pursue the claims alleged in this lawsuit over the next four years. It was only when Defendants learned of the Chapter 7 bankruptcy and filed the pending motion for summary judgment that Lujano moved in March 2012 to reopen the bankruptcy case and convert it to a Chapter 13 proceeding so she could pursue the litigation claims on behalf of the estate. In doing so, Lujano implicitly acknowledged that these claims had not been abandoned and instead remained part of the estate, and she represented that any

14

proceeds would be forwarded to the Trustee for distribution to creditors. (Bankr. Doc. 41, at 5).

Defendants argue that the conversion to Chapter 13 has no effect on Lujano's standing but do not provide authority for this assertion. There is no question, however, that under a Chapter 13 bankruptcy, the debtor has the authority to pursue litigation claims on behalf of the estate, whereas in a Chapter 7 bankruptcy only the trustee may do so. The reasons for this were explained by the Seventh Circuit in *Cable*, *supra*:

> Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor's property, to which end Congress granted the trustee broad powers without interference from the debtor. The trustee has sole authority to dispose of property, including managing litigation related to the estate. *See* 11 U.S.C. §§ 541(a)(1), 704(1). Chapter 13, on the other hand, encourages the debtor to pay his debts over time by establishing a court-approved payment plan but leaving the debtor in possession of the estate. *See* 11 U.S.C. § 1303 (debtor-in-possession has substantially same powers as the trustee in other chapters); § 1306(b) (debtor retains possession of estate except as limited by plan). The trustee acts as an adviser and administrator to facilitate the repayment of debts according to the plan. *See. id.* § 1302.

*Cable*, 200 F.3d at 472.

Under Chapter 13 the debtor is given substantial powers of a trustee that are not available under Chapter 7, although this authority is subject to some limitations not relevant here. 11 U.S.C. § 1303; *In re Young*, 439 B.R. 211, 219 (Bankr. M.D. Fla. 2010) (stating that "in a Chapter 13 case, the debtor has, exclusive of the trustee, most of the rights and powers of the trustee under" the Bankruptcy Code). The result is that, "unless otherwise specifically provided by the debtors' [sic] plan, a [Chapter 13] debtor remains in possession of all of his or her assets pre- and postconfirmation." *In re Griner*, 240 B.R. 432, 436 (Bankr. S.D. Ala. 1999). Such a right to hold property effectively makes a Chapter 13

debtor a debtor-in-possession, at least to the extent that his authority is not limited by § 1303 of the Bankruptcy Code.[5]  *In re McConnell*, 390 B.R. 170, 180 (Bankr. W.D. Pa. 2008).  Unlike a Chapter 7 debtor, therefore, a Chapter 13 debtor-in-possession has rights that are defined by FED. R. BANKR. P. 6009, which states that "the trustee *or debtor in possession* may prosecute . . . any pending action . . . by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."  FED. R. BANKR. P. 6009 (emphasis added).  This confers standing on the Chapter 13 trustee to bring claims on behalf of the estate, with the provision that the debtor has duly identified the claim to the Bankruptcy Court.  *See, e.g., Cable*, 200 F.3d at 472-74; *Smith v. Rockett*, 522 F.3d 1080, 1081-82 (10th Cir. 2008); *Crosby v. Monroe County*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).

Once Lujano's bankruptcy was converted to Chapter 13, she was granted possession of the estate's property.  11 U.S.C. § 1306(b).  That property is "defined by § 541 to include 'all legal or equitable interests of the debtor in property as of the commencement of the case[,]' 11 U.S.C. § 541(a)(1)[,]" including "legal claims that could be prosecuted for benefit of the estate."  *Cable*, 200 F.3d at 472-73.  Therefore it is Lujano (not the trustee) who now has authority to prosecute the litigation claims identified in the

---

⁵       A debtor-in-possession is defined as a debtor who has qualified to serve as a trustee.  11 U.S.C. § 1101 (explaining the term under Chapter 11).  Only Chapter 11 and Chapter 12 of the Bankruptcy Code explicitly provide for a debtor-in-possession.  By contrast, Chapter 7 "does not recognize the legal entity debtor-in-possession."  *Cable*, 200 F.3d at 473.  Chapter 13 does not use the term "debtor-in-possession," but the fact that the debtor retains possession of the estate's property under § 1306(b) of the Bankruptcy Code, *supra*, has led courts to consider a Chapter 13 debtor as a debtor-in-possession.  *See In re McConnell*, 390 B.R. 170, 180 (Bankr. W.D. Pa. 2008) ("To hold that a Chapter 13 debtor is not a debtor-in-possession simply because those three words do not appear in succession in Chapter 13 . . . makes no logical sense in light of [the] language found in 11 U.S.C. § 1306(b).").

amended schedules, and she is the real party in interest. *See, e.g.*, *id.* at 472-74; *Smith*, 522 F.3d at 1081-82; *Crosby*, 394 F.3d at 1331 n.2; *Swearingen-El v. Cook County Sheriff's Dept.*, 456 F. Supp. 2d 986, 989-91 (N.D. Ill. 2006) ("It is well established that, unlike Chapter 7 bankruptcies, a Chapter 13 debtor in possession can bring a claim in his own name on behalf of the bankruptcy.).

Defendants do not dispute that a Chapter 13 debtor ordinarily has standing to sue on behalf of the estate but argue that the conversion to Chapter 13 has no effect here because it occurred after the motion for summary judgment and sanctions had been filed and after years of litigation. (Doc. 436, at 5). While this is true, it is beside the point. When the bankruptcy court entered orders reopening the Chapter 7 case and converting it to Chapter 13, Lujano became the proper party in interest to pursue this lawsuit. Since Lujano has prudential standing to bring the claims at this juncture, the Court will not dismiss the lawsuit for her lack of standing in the past. *See Swearingen-El*, 456 F. Supp. 2d at 989-91 (*pro se* plaintiff lacked standing when the lawsuit was filed but became the proper party in interest by converting the Chapter 7 bankruptcy to Chapter 13).

Defendants also complain that they incurred hundreds of thousands of dollars in fees and costs over the past four years defending a lawsuit that Lujano did not have standing to pursue. It is doubtful that Defendants would have avoided these legal expenses had they learned of the bankruptcy sooner and moved to dismiss for lack of standing four years ago. Instead, such a motion presumably would have triggered Lujano to move to convert to Chapter 13 four years ago in order to avoid dismissal for lack of standing. Even if the trustee had opposed the motions to reopen the bankruptcy and convert to Chapter 13 – or the bankruptcy court had denied the motions – the lawsuit would not necessarily have been

dismissed since the trustee could have sought leave to substitute in as plaintiff.[6]  It is speculative at best for Defendants to assume that the lawsuit would have terminated four years ago if Lujano had timely disclosed the bankruptcy filing.

Lastly, Defendants argue that the impact of the conversion to Chapter 13 is "unknown" because the Chapter 13 Plan has not been approved and is subject to dismissal.  (Doc. 436, at 5-6).  These arguments no longer apply because, not long after Defendants made them, the bankruptcy court approved Lujano's Plan.  In addition, the trustee withdrew his motion to dismiss after Lujano amended the Plan so that it affirmatively stated that any proceeds from the lawsuit would be forwarded to the trustee for distribution to creditors.  (Bankr. Doc. 41, at 5).

Since Lujano is now the real party in interest for the reasons set forth above, Defendants' motion for summary judgment based on lack of standing is denied.

**B.      Judicial Estoppel**

Defendants next argue that, even if Lujano is the real party in interest, she is judicially estopped from pursuing this case because she falsely stated to the bankruptcy court that she was not a party to a lawsuit and omitted the claims in this lawsuit from her schedules.  Lujano counters that by virtue of having converted the bankruptcy to Chapter 13 and amended the schedules to include the litigation claims, she is now suing on behalf of the estate and her creditors (not herself) and so the judicial estoppel doctrine does not apply.  This Court agrees with Lujano.

---

[6]      Federal Rule of Evidence 17 provides that a court may not dismiss an action when the plaintiff is not the real party in interest "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  FED. R. CIV. P. 17(a)(3).

Judicial estoppel is "an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process," and it is governed by "no precise or rigid formula." *Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005). "[T]hree factors... 'typically inform the decision whether to apply the doctrine in a particular case.'" *In re Knight-Celotex, LLC*, __ F.3d __, 2012 WL 3871526, at *5 (7th Cir. Sept. 5, 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). They are:

> first, that 'a party's later position must be clearly inconsistent with its earlier position;' second, that 'the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;' and third, that 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (quoting *New Hampshire*, 532 U.S. at 750-51). *See also United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). "These factors are not a rigid test that must be applied every time the issue of judicial estoppel is raised, but rather are general guideposts that must be considered in the context of all the relevant equities in any given case." *In re Knight-Celotex, LLC*, __ F.3d __, 2012 WL 3871526, at *5 (citing *Biesek*, 440 F.3d at 413).

Judicial estoppel is frequently invoked where a debtor has failed to identify a claim on a bankruptcy schedule yet tried to pursue that claim for the debtor's own benefit in a lawsuit. But courts should not apply the doctrine where the debtor's failure to disclose was the result of mistake or inadvertence. *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990). Instead, estoppel "is to be applied where intentional self-contradiction is being used as a means of obtaining [an] unfair advantage[.]" *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1396 (7th Cir. 1997) (internal quote and citation omitted). *See*

*also Swearingen-El*, 456 F. Supp. 2d at 991; *In re Envirodyne Inds., Inc.*, 183 B.R. 812, 823 (Bankr. N.D. Ill. 1995).

Defendants rely heavily on the Seventh Circuit's decision in *Cannon-Stokes, supra,* in support of their judicial estoppel argument; however, the analysis in that case actually counsels against applying the doctrine under the facts presented here. In *Cannon-Stokes,* the Chapter 7 debtor denied to the bankruptcy court that she had any pending claims even though she was pursuing an administrative claim against her employer for $300,000. *Cannon-Stokes*, 453 F.3d at 447. After obtaining a discharge of $98,000 in unsecured debt, the debtor filed a lawsuit against the employer based on that claim, thereby taking a position that was inconsistent with her bankruptcy declaration. *Id.* In upholding the lower court's application of judicial estoppel, the Seventh Circuit observed that the creditors were "out of the picture" and the debtor was pursuing the litigation claims "for her personal benefit." *Id.* at 448. The court suggested that, had the debtor converted the bankruptcy to Chapter 13 "so that the creditors could benefit from any recovery[,]" rather than seeking "every penny of the judgment for herself," judicial estoppel would not apply. *Id.* Under the conversion scenario, the court reasoned, the elements of judicial estoppel would not be satisfied and applying the doctrine would not be equitable.

> Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit. Moreover, as a technical matter the estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims, and unless the estate itself engages in contradictory litigation tactics the elements of judicial estoppel are not satisfied. But if the estate (through the trustee) abandons the claim, then the creditors no longer have an interest, and with the claim in the debtor's hands the possibility of judicial estoppel comes to the fore.

*Id.*

Similar reasoning led the Seventh Circuit to vacate a judgment entered against a debtor who had omitted an EEOC charge from a Chapter 13 petition in *Rainey v. United Parcel Service, Inc.*, 466 Fed. Appx. 542, 544-45 (7th Cir. 2012). After the bankruptcy case closed and the EEOC issued a right to sue letter, the debtor sued his employer. The lower court dismissed the lawsuit because the debtor lacked standing; the bankruptcy case was closed, and the debtor had not given the trustee a chance to administer or abandon the claims so they remained part of the estate. *Rainey*, 466 Fed. Appx. at 543-44. But the court said the debtor would be allowed to pursue the litigation claims if the bankruptcy court reopened his case. *Id.* at 544.

On appeal, the debtor sought to vacate the dismissal in part because he had succeeded in getting the bankruptcy court to reopen the Chapter 13 case and then had amended the schedule of personal property to include the discrimination claims. *Id.* After finding that the debtor had standing to sue, the Seventh Circuit rejected the employer's argument that the debtor should nonetheless be barred from pursuing the claims "because he did not disclose them earlier." *Id.* at 544. In so holding, the court expressed its unwillingness to apply judicial estoppel where claims are pursued on behalf of creditors.

> Yet as authority for this proposition [that judicial estoppel should be applied], UPS cites only decisions where the bankruptcy case remained closed, [citations omitted], or where the debtor was bringing the claim on his own behalf rather than for the estate, [citations omitted], or where the trustee had abandoned the property and so the debtor could bring the claim only for her personal benefit, *Cannon-Stokes,* 455 F.3d at 448.

> \* \* \* \* \*

> Preventing [the debtor] from bringing his claims would undermine the interests of his creditors and defeat the district court's intent that [the debtor] be able to pursue the discrimination claims if he reopened his bankruptcy case.

*Id.* at 544-45. *See also Aikens v. Soul Circus, Inc.*, No. 09 C 6678, 2011 WL 2550828, at *4 n.5 (N.D. Ill. June 24, 2011) ("The 'own benefit' distinction is important: judicial estoppel is an equitable doctrine, and the Seventh Circuit has stated that it would be inequitable to use the doctrine to harm creditors.... Thus, unless the bankruptcy estate itself engages in "contradictory litigation tactics," there is no estoppel on behalf of the estate.").

In addition to *Cannon-Stokes*, Defendants point to several other decisions in support of their judicial estoppel argument. All are distinguishable in that the debtors were suing on their own behalf rather than on behalf of the estate. In *Williams v. Hainje*, 375 Fed. Appx. 625 (7th Cir. 2010), for example, the debtor amended his Chapter 13 schedules to include omitted claims but then defaulted on the reorganization plan so the Chapter 13 case was dismissed. As the court observed, this meant the debtor was "pursuing [the lawsuit] on his own behalf, as the bankruptcy estate no longer exists." *Id.* at 627. In *Smith v. American General Life Ins. Co.,* 544 F. Supp. 2d 732 (C.D. Ill. 2008), the debtor reopened the bankruptcy case and amended the schedules but the trustee then abandoned the newly disclosed claims by closing the estate without taking any action to administer them. *Id.* at 734. As a result, the debtor necessarily was suing on his own behalf rather than for the benefit of the creditors. The court observed as much when it distinguished other cases where courts had declined to apply judicial estoppel. *Id.* at 735-36 and n.6 ("Significantly, however, these cases were being pursued for the benefit of the creditors not the plaintiff. As such, they do not fall under *Cannon-Stokes* but rather *Biesek v. Soo Line R. Co.*, 440 F.3d 410 (7th Cir. 2006)").

Finally, the debtors in *Esparza v. Costco Wholesale Corp.*, No. 10 C 5406, 2011 WL 6820022 (N.D. Ill. Dec. 28, 2011) and *Bland v. Rahar*, No. 06-3072, 2008 WL 109388 (C.D.

III. Jan 9, 2008), were suing on their own behalf.  In *Esparza*, the debtor already had converted from Chapter 13 to Chapter 7 and obtained a discharge before the discovery of the omitted claim.  After this, and in an effort to avoid summary judgment in a pending discrimination lawsuit, the debtor filed an amended Statement of Financial Affairs disclosing her discrimination claims and "attempted" to re-open the bankruptcy.  *Id.* at *4.  Since these actions did not convert the bankruptcy back to a Chapter 13, the debtor necessarily was still pursuing the litigation claims on her own behalf since only the trustee has standing to pursue claims for the estate in a Chapter 7 case.[7]  In *Bland,* the debtor reopened a Chapter 7 bankruptcy and amended his schedules to disclose contingent litigation claims that had been omitted.  The trustee, however, abandoned the claims after this so the court found that the debtor was suing on his own behalf and was judicially estopped from doing so. *Bland*, 2008 WL 109388, at *2-4.

Unlike the debtors in *Cannon-Stokes* and the other cases cited by Defendants, Lujano is pursuing the litigation claims as a debtor in possession and on behalf of the estate.  There is no factual dispute about this given the bankruptcy court's decision to allow the Chapter 7 case to be reopened and converted to Chapter 13, and Lujano's amending of her schedules to include the litigation claim.  Indeed, her Chapter 13 plan was approved by the bankruptcy court only after Lujano added a "special term" that any proceeds

---

[7]        After dismissing the action based on the debtor's lack of standing, the court addressed judicial estoppel "for the sake of completeness" in the event that the trustee had abandoned the claims.  *Esparza*, 2011 WL 6820022, at *4.  The abandonment issue stemmed from a statement in the debtor's affidavit to the effect that the Trustee had no interest in pursuing the litigation; however, the court recognized that "due to the state of [the debtor's] filings, it is not clear whether the trustee "actually abandoned its claim...."  *Id.*  The court then applied judicial estoppel because the debtor had  amended her filings only after being caught in a deception.  The court reasoned that allowing the lawsuit to proceed would "diminish the incentive to provide truthful disclosures to the bankruptcy court...."  *Id.*

obtained from the lawsuit would be forwarded to the trustee for distribution to creditors. (Bankr. Doc. 41, at 5). Given this, the Court is persuaded that judicial estoppel should not be applied. *See Swearingen-El*, 456 F. Supp. 2d at 991 (debtor who reopened Chapter 7 bankruptcy, converted to Chapter 13, and disclosed previously omitted claims was "pursuing this suit for the benefit of his creditors" and "[t]his more than distinguishes *Cannon-Stokes*...."). *Cf. Tucker v. Closure Systems Intl.*, No. 1:10-cv-1476, 2011 WL 4479112, at *3 (S.D. Ind. Sept. 27, 2011) (judicial estoppel not applied where debtor amended Chapter 13 schedules to include litigation claims since "proceeds will go to the Trustee for distribution to her creditors.").

It is true that Lujano (not just her creditors) stands to gain from the lawsuit, especially given the relatively small amount of her unsecured debt. If Lujano prevails and the monetary award exceeds what she owes creditors, she will receive the excess; the bankruptcy court "returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Matter of Heath*, 115 F.3d 521, 524 (7th Cir. 1997). This Court is also mindful that dishonest debtors might be more likely to conceal litigation claims during a bankruptcy if they believe the claims can be disclosed later and without penalty in the event they are caught. But no debtor can be assured that a late disclosure of a contingent claim, even if allowed by the bankruptcy court, will save a lawsuit from dismissal. For example, in *Bland*, *supra*, the debtor succeeded in quickly reopening his Chapter 7 bankruptcy case and amending the schedules to disclose contingent claims that had been omitted. But the lawsuit still was dismissed under judicial estoppel since the trustee declined to intervene and instead abandoned the newly disclosed claims such that the debtor was suing for his own benefit. *Bland*, 2008 WL 109388, at *3-4.

24

Lujano's lawsuit is not suffering the same fate here but this is largely because of decisions of the bankruptcy court over which Lujano had no control. The bankruptcy court had the power to deny Lujano's request to reopen the bankruptcy as well as her request to convert from Chapter 7 to Chapter 13. While the bankruptcy code affords debtors a one-time right to convert from Chapter 7 to Chapters 11, 12, or 13 (11 U.S.C. § 706(a), such a conversion can be denied when a debtor fails to disclose an asset on her bankruptcy schedules, or when the debtor's motives are suspect. *See, e.g., In re Pakuris*, 262 B.R. 330, 336 (Bankr. E.D. 2001). In her motions filed with the bankruptcy court Lujano revealed that she had omitted the civil rights lawsuit from the Chapter 7 schedules. Had the bankruptcy court opted to deny the motions as it could have done, Lujano would be foreclosed from litigating, either for lack of standing or on judicial estoppel grounds (if claims deemed abandoned). In other words, even though judicial estoppel should not be applied in a manner that hurts creditors, dishonest debtors are in no way guaranteed an opportunity to save a lawsuit from dismissal simply by disclosing concealed assets after they are discovered. Debtors run a grave risk that they will be unable to pursue litigation claims that are not disclosed during bankruptcy.[8]

In exercising its discretion and considering whether it would be equitable to apply judicial estoppel here, this Court must consider the impact of its ruling not only on Lujano

---

[8] This Court does not mean to suggest that Lujano was a dishonest debtor. While Defendants assert that she deliberately concealed the lawsuit, Lujano denies this and points as evidence to her disclosure of the related EEOC charge involving the same allegations of workplace misconduct. Lujano blames her bankruptcy attorney for the omission of the lawsuit, claiming in her affidavit that she informed him of the suit and relied on him to properly complete the bankruptcy forms. (Pl.'s SOF, Ex. B ¶ 2). This Court need not resolve whether Lujano's omission of the lawsuit was inadvertent (or whether her subjective intent is properly considered when determining this), because the Court declines to apply judicial estoppel for other reasons set forth in this Opinion.

but also on the creditors. The creditors were deprived of the opportunity to profit, at least potentially, from Lujano's undisclosed lawsuit in the Chapter 7 proceeding. Applying judicial estoppel now would be inequitable since it would further deprive the creditors of a chance to recover on their claims because of Lujano's earlier nondisclosure. *Id.* at 338. *See also Biesek*, 440 F.3d at 413 (judicial estoppel is equitable "and using it to land another blow on the victims of bankruptcy fraud is not an equitable application."). For these reasons, the Court denies Defendants' request to dismiss the lawsuit on judicial estoppel grounds.

### C. Discovery Sanctions

Even if Lujano is not estopped from litigating this case, Defendants contend that the lawsuit should be dismissed as a sanction because Lujano failed to disclose the existence of her bankruptcy case in response to Defendants' discovery requests. Federal Rule of Civil Procedure 34(a) provides that an incomplete or evasive interrogatory response should be treated as no response at all. FED. R. CIV. P. 34(a)(4). A party's failure to answer interrogatories is governed by Rule 37(d), which states that a court may order sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." FED. R. CIV. P. 37(d)(1)(A)(ii). Sanctions for failing to answer interrogatories can include the dismissal of an action under Rule 37(b)(2)(A)(v). FED. R. CIV. P. 37(d)(3). Dismissal, however, is a drastic remedy and "is reserved for cases in which the offending party has demonstrated wilfulness, bad faith, or fault." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000). *See also Adkins v. Mid-American Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill.

1992) ("Dismissal is generally seen as the sanction of last resort or for extreme circumstances.").

Oddly, Defendants never identify the specific discovery requests that they believe called for disclosure of the bankruptcy filing. Instead they refer generally to interrogatories concerning "damages and prior lawsuits, grievances or claims" and document requests "related to [Plaintiff's] alleged damages." (Doc. 401-1, at 9; Doc. 436, at 15). It is Lujano who directs the Court to specific discovery requests that seek such information. Interrogatory No. 3 states: "Identify all lawsuits, claims and/or grievances which Plaintiff has filed or to which she has been a party." (Defs.' SOF, Ex. 8).[9] Subject to her objection that the request was overbroad, unduly burdensome and sought information not reasonably calculated to lead to the discovery of admissible evidence, Lujano answered that the instant suit was the only lawsuit she had filed "alleging complaints of sexual harassment, discrimination, and/or retaliation." (*Id.*). Three months later Lujano supplemented her response, stating that she had also filed a personal injury case three or four years before her suit against Defendants. (Defs.' SOF, Ex. 14).

In response to the request for sanctions, Lujano argues that she was not obligated to include her Chapter 7 bankruptcy petition in response to Interrogatory No. 3 and that her answer was neither incomplete nor incorrect. (Doc. 432, at 12). This Court agrees. The term "suit" is defined in Black's Law Dictionary as a "proceeding by a party or parties against another in a court of law." Black's Law Dictionary 1572 (9th ed. 2009). Bankruptcy

---

[9] Lujano also highlights Interrogatory No. 2 which essentially asks the same thing: "Identify all lawsuits, claims, and/or grievances which Plaintiff has filed or to which she has been a party in the last ten years." Lujano gave the same answer to both interrogatories.

cases are not filed against other parties and, barring the subsequent filing of adversary proceedings, do not involve the familiar hallmarks of lawsuits such as plaintiffs, defendants, and causes of action. Had Lujano initiated an adversary proceeding, or had she been named as the defendant in one, then she would clearly have been required to identify her bankruptcy case to Defendants. *Cf. In re Mariner Post-Acute Network, Inc.*, 267 B.R. 46, 53 (Bankr. D. Del. 2001) (noting that the issues and parties in interest in bankruptcy litigation can be even more inclusive than in civil litigation). But this did not happen, and Defendants have not cited any authority holding that a bankruptcy petition is the equivalent of a suit, claim, or grievance. If Defendants wanted to ensure that Lujano disclosed bankruptcy filings, they could have asked her this directly. Having failed to do so and instead served an interrogatory that at best is ambiguous about whether bankruptcies are called for, Defendants cannot demonstrate that Lujano acted in bad faith when she omitted the bankruptcy.

Moreover, even if the bankruptcy were considered to be a lawsuit, Lujano made it clear in her response that she was only identifying lawsuits alleging "complaints of sexual harassment, discrimination, and/or retaliation." (Defs.' SOF, Ex 14). Defendants never attempted to obtain a broader answer identifying *all* lawsuits so can hardly complain now that the narrow answer is sanctionable. Defendants also say Lujano was required to produce documents related to her damages and medical bills but do not identify the specific discovery requests or adequately explain why the bankruptcy petition would be responsive. For all of these reasons, the Court finds that no discovery violation occurred and so there is no basis for dismissing the lawsuit as a sanction.

## CONCLUSION

Defendants' motion for summary judgment or, in the alternative, discovery sanctions [401] is denied. The parties are to appear for a status hearing on October 11, 2012 at 10:30 a.m. at which time the case will be set for trial.

ENTER:

Dated: September 28, 2012

**SHEILA FINNEGAN**
United States Magistrate Judge